UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY W. HOFFMAN,

        Plaintiff,

    v.

SONOMA SPECIALTY HOSPITAL, LLC, et al.,

        Defendants.

Case No. 19-cv-07080-JSW

**ORDER DENYING MOTION FOR WITHDRAWAL OF REFERENCE WITHOUT PREJUDICE TO RENEWAL**

Re: Dkt. No. 3

Now before the Court for consideration is the motion for withdrawal of reference, filed by Sonoma Specialty Hospital, LLC ("SSH"), American Advanced Management Group, Inc. ("American"), and Gurpreet Singh ("Singh").[1]  On December 6, 2019, the Court continued the matter to obtain the benefit of the Bankruptcy Court's ruling on motions filed in that court, which Plaintiff, Timothy Hoffman ("the Trustee"), argued overlapped with the issues presented by the motion for withdrawal of reference.  On January 16, 2020, the Bankruptcy Court issued a Recommendation Regarding Motion to Withdraw Reference (the "Recommendation").[2]  (Dkt. No. 13-1.)

The Court has considered the parties' papers, including their supplemental briefs, the

---

[1]  SSH, American and Singh were named as defendants in the adversary proceeding they seek to withdraw from the Bankruptcy Court.  American and SSH filed counterclaims against the Trustee in that proceeding.  On December 20, 2019, the Trustee stipulated to dismiss the claims against American and Singh, without prejudice.  (See Recommendation at 4, ¶ 6.)  Because American and SSH have not dismissed their counterclaims, when the Court refers to those two entities collectively, it uses the term "Counterclaimants."

[2]  Bankruptcy Court Local Rule 5011-2(b) provides that a bankruptcy judge may "recommend to the District Court whether the case or proceeding should be withdrawn under 28 U.S.C. § 157(d)."  The parties have treated the Recommendation as the ruling that triggered the Court's schedule for supplemental briefs, and the Court shall do so as well.

United States District Court
Northern District of California

1  Recommendation, relevant legal authority, the record in this case, and it has had the benefit of oral

2  argument.[3]  The Court HEREBY ADOPTS, IN PART, the Bankruptcy Court's recommendation

3  and DENIES the motion for withdrawal, without prejudice to renewal.

4  **BACKGROUND**

5  On September 26, 2018, Sonoma West Medical Center ("Debtor") filed a voluntary

6  petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Main Case").[4]

7  Before Debtor filed for bankruptcy, it operated and managed a full services hospital (the "District

8  Hospital") pursuant to a Management and Staffing Services Agreement ("MSSA") with Palm

9  Drive Healthcare District (the "District").

10  In August 2018, after Debtor advised the District it could no longer perform its obligations

11  under the MSSA, the District terminated the MSSA.  On August 26, 2018, the District entered into

12  a Management Services Agreement with American ("Operative Agreement"), and American

13  assigned its rights to SSH.  On September 9, 2018, SSH took over management of the District

14  Hospital.[5]  The central dispute between the parties pertains to who has the right to accounts

15  receivable generated from Debtor's operation of the District Hospital up to and including

16  September 8, 2018 (the "Accounts Receivable") – the Estate or the Counterclaimants.[6]

17  On August 9, 2019, SSH filed a request for allowance and payment of administrative

18  claims ("Administrative Claim"), which it argued was based on the Trustee's post-petition

19  conduct.  SSH argued that the Debtor (and, therefore, the Trustee), had no right to the Accounts

21  [3]  The Court has not considered the offer of proof in Defendants' supplemental brief.

22  [4]  The Court follows the Trustee's convention of using the term "Main Case" to distinguish
23  the proceedings instituted by the Chapter 7 petition from the Adversary Proceeding initiated by the
   Trustee against the Defendants.

24  [5]  The District has been the subject of two bankruptcy proceedings under Chapter 9.  In the
25  second of those two proceedings, the Trustee and the District settled the Trustee's administrative
   claim regarding the Accounts Receivable.

26  [6]  When the Court uses the term "Accounts Receivable," it does not refer to accounts
27  receivable generated after September 8, 2018, which all parties agree would not be part of the
   Estate.

28  2

1   Receivable once the District terminated the MSSA for cause.  (Plaintiff's Request for Judicial

2   Notice ("Plaintiff's RJN"), Exs. 2-5.)[7]

3        On August 20, 2019, the Trustee initiated an adversary proceeding (the "Adversary

4   Proceeding") against SSH, American, and Singh, in which it asserted claims for turnover of

5   property of the estate, pursuant to 11 U.S.C. section 542, accounting, and conversion.

6   (Declaration of Steven G. Polard, ¶ 2, Ex. 1 (Adversary Proceeding Complaint ("APC")); *see also*

7   Trustee's RJN, Ex. 23 (APC).)  The Trustee alleged that American and Singh were the alter-egos

8   of SSH.  (APC ¶¶ 17-21.)

9        On September 9, 2019, the Bankruptcy Court conducted a hearing on the Administrative

10  Claim.  (Trustee's RJN Ex. 6 ("9/9/19 Tr.").)  During that hearing, the parties agreed that the

11  substantive issues raised by the Administrative Claim and the Adversary Proceeding overlapped.

12  (9/9/19 Tr. at 3:12-4:21.)  The Bankruptcy Court heard argument on the parties' positions and

13  stated Counterclaimants were facing an "uphill battle", based, in part, on the Trustee and the

14  District's settlement relating to the Accounts Receivable.  (*See, e.g., id.* at 5:18-11:4.)  At the

15  conclusion of the hearing, the Bankruptcy Court stated that "for procedural purposes today, I'm

16  simply going to deny this motion without prejudice for procedural grounds."  The Bankruptcy

17  Court advised Counterclaimants to address the issues in their responsive pleading to the APC.  (*Id.*

18  at 16:12-23.)

19       On October 9, 2019, Counterclaimants filed their answer and counterclaims.  (Polard

20  Decl., ¶ 4, Ex. 2; *see also* Trustee's RJN, Ex. 24.)  Counterclaimants admitted that the claim for

21  turnover is a core proceeding pursuant to Section 157(b)(2)(E).  (Answer ¶ 4.)  They also stated

22  that they did "not consent to a final judgment of the Bankruptcy Court as to the Complaint and/or

23  Counterclaims as there can only be one judgment, and only one claim, the turnover claim is core"

24  and demanded a jury trial.  (Answer ¶ 5 & p. 14; Counterclaims ¶ 2 and p. 25.)

25  _____

26  [7]     The parties ask the Court to take judicial notice of filings in the Main Case, the Adversary
    Proceeding, and in the District's bankruptcy proceedings.  The Court GRANTS those requests in
27  part.  It will take judicial notice of the existence of the documents and arguments presented
    therein.  The Court will not take judicial notice of any facts that are subject to reasonable dispute.

28

The Bankruptcy Court recommends that this Court permit it to address and resolve the threshold question of whether or not the Accounts Receivable are property of the Estate (the "Threshold Issue"). (*See* Recommendation at 2:8-11, 5:1-15.) It notes that if the Threshold Issue is resolved in Plaintiff's favor, the Bankruptcy Court could resolve the remaining issues raised in Plaintiff's complaint. If, however, the Threshold Issue is resolved in the Counterclaimants' favor, "the District Court would be the appropriate court to determine any remaining issues." (*Id.* at 12:21-17.)

## ANALYSIS

**A.   Applicable Legal Standards.**

District courts, rather than bankruptcy courts, have original jurisdiction over all bankruptcy matters. 28 U.S.C. § 1334(b).[8] However, district courts may refer all bankruptcy matters to a bankruptcy court. 28 U.S.C. § 157(a). In general, bankruptcy courts have jurisdiction to consider and enter final judgment on "core" proceedings. *See id.* § 157(b)(2). The list of core proceedings provided in Section 157(b)(2) is non-exhaustive but must be read narrowly so as to avoid "constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004).

Although a bankruptcy court may have statutory authority to enter final judgment on core proceedings, they do not have authority under Article III to enter final judgment on core proceedings that do not "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 564 U.S. 462, 499 (2011). "Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core.'" *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Castlerock Props.*, 781 F.2d 159, 162 (9th Cir. 1986)). Section 157 permits a bankruptcy court to "hear a proceeding that is not core but

---

[8]      Unless otherwise noted, all future citations are to Title 28 of the United States Code.

United States District Court
Northern District of California

that is otherwise related to a case under title 11."  28 U.S.C. § 157(c).  In those cases, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  *Id.*

A case that has been referred to the bankruptcy court may be transferred back to the district court by withdrawing the reference.  *Id.* § 157(d).  The burden of persuasion is on the party seeking withdrawal, which in this case is the Counterclaimants.  *See Hjelmeset v. Cheng Hung,* No. 17-cv-05697-BLF, 2018 WL 558917, at *3 (N.D. Cal. Jan. 25, 2018); *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214, 218 (D. Haw. 2006).  Under Section 157(d), withdrawal can be mandatory or permissive.  Counterclaimants argue that permissive withdrawal is appropriate in this case.

Under that portion of Section 157(d), a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."  *Id.*[9]  When a court determines "whether cause exists, [it] should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors."  *Sec. Farms*, 124 F.3d at 1008 (citing *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)).  Before a court considers the *Security Farms* factors, it is useful to characterize a party's claims as core or non-core under Section 157(b).  *See Hawaiian Airlines*, 355 B.R. at 223.

**B.      The Bankruptcy Court's Recommendation.**

The Bankruptcy Court recommends that this Court allow it to address the Threshold Issue and, once that issue has been resolved, revisit the issue of whether the referral to the Bankruptcy Court should be withdrawn.  The Bankruptcy Court also recognized that "permissive withdrawal

---

[9]      A motion is timely "if it was made as promptly as possible in light of the developments of the bankruptcy proceedings."  *Sec. Farms*, 124 F.3d at 1007 n.3 (internal citations omitted).  Neither the Trustee nor the Bankruptcy Court have suggested that the motion is untimely, and the Court concludes it is timely.

United States District Court
Northern District of California

may be appropriate to address the Threshold Issue." (Dkt. No. 13-1, Recommendation at 2:8-11, 6:2-3.)  The Bankruptcy Court concluded the Threshold Issue is "non-core" because it does not depend on bankruptcy laws" and is "simply a matter of contract interpretation and would exist even in the absence of a bankruptcy case."  (*Id.* at 6:20-24.)  Notwithstanding the "facial appropriateness" of permissive withdrawal, the Bankruptcy Court analyzed the *Security Farms* factors and found those factors weighed in favor of permitting it to address the Threshold Issue. The Bankruptcy Court also concluded that SSH consented to the jurisdiction of the Bankruptcy Court and that American no longer had a valid counterclaim so that neither entity had the right to a jury trial.[10]

**C.     The Court Denies the Motion for Withdrawal of Reference Without Prejudice and Adopts the Bankruptcy Court's Recommendation, in Part.**

**1.     Core versus Non-Core.**

The parties agree that the turnover claim is core, and the Court shall assume for the sake of argument that the remaining claims and counterclaims are non-core.  The Bankruptcy Court determined the Threshold Issue is non-core.  Taken in isolation, the Threshold Issue would appear to be non-core because it involves general principles of contract law.  However, the Threshold Issue is just that, an issue to be resolved.  It is not, in and of itself, a claim that has been asserted by either party.

**2.     The *Security Farms* Factors Weigh Against Withdrawal.**

The Bankruptcy Court also considered the *Security Farms* factors.  Counterclaimants appear to suggest that because the Bankruptcy Court determined that permissive withdrawal would be appropriate, its subsequent analysis of these factors is flawed.  The Court has considered the Bankruptcy Court's analysis of the *Security Farms* factors within the context of a pretrial determination of the Threshold Issue, and it concludes that its analysis of those factors is well

---

[10]     The Bankruptcy Court did state that if the Threshold Issue was resolved in SSH's and Counterclaimant's favor, this Court would be the appropriate forum to address any remaining issues. (Recommendation at 12:25-26.)  Therefore, it appears that the analysis in the Recommendation may be limited to whether Counterclaimants have a right to jury trial on the Threshold Issue.  For the reasons discussed below, the Court does not reach this question.

United States District Court
Northern District of California

1   reasoned.

2   "The bankruptcy court may retain jurisdiction over the action for pre-trial matters." *Sigma*

3   *Micro Corp. v. Healthcentral.com*, 504 F.3d 775, 788 (9th Cir. 2007). In *Sigma Micro*, the Ninth

4   Circuit concluded that a bankruptcy court could address dispositive motions without "affect[ing] a

5   party's Seventh Amendment *right* to a jury trial, as these motions merely address whether a trial is

6   necessary at all." *Id.* at 787 (emphasis in original). Counterclaimants also do not seriously dispute

7   that the outcome of the turnover action will turn on the Threshold Issue, *i.e.* who has the legal

8   right to the Accounts Receivable, and the parties agree that the turnover claim is core.

9   As noted, the Threshold Issue involves matters of contract interpretation. Although this

10   Court would be equally capable of interpreting and applying state law on that issue, the

11   Bankruptcy Court has been presiding over the Adversary Proceedings since August 2019.

12   Therefore, it has a greater familiarity than this Court does with respect to the facts underlying the

13   dispute, including the terms of the settlement in the Main Case. Even if, in in the future, this

14   Court concludes withdrawal is appropriate, or if the Bankruptcy Court determines that it must send

15   the matter to the Court on proposed findings of fact and conclusions of law, "[t]here is work to be

16   done to get this case ready for a potential trial, and the bankruptcy court retains jurisdiction and

17   the ability to handle those proceedings." *Hjelmeset*, 2018 WL 558917, at *4; *see also* B.L.R.

18   9015–2(b). The Bankruptcy Court also has demonstrated it is ready, willing, and able to address

19   the Threshold Issue. Therefore, the Court concludes that the efficient use of judicial resources

20   would weigh in favor of permitting the Bankruptcy Court to address the Threshold Issue.

21   *Hjelmeset*, 2018 WL 558917, at *5-*6.

22   The Court also concurs that withdrawing the matter at this juncture could lead to additional

23   delays and costs to the parties. The Bankruptcy Court also determined that, in light of the

24   connection to the settlement in the Main Case, which was incorporated by reference into the

25   confirmed reorganization plan, permitting that Court to address the Threshold Issue would favor

26   uniformity of Bankruptcy Administration. The Court agrees.

27   Finally, the Bankruptcy Court determined that Counterclaimants may be engaged in forum

28

United States District Court
Northern District of California

shopping.  In one of their supplemental briefs (Dkt. No. 15), Counterclaimants argue that by dismissing the claims against American and Dr. Singh, it is the Trustee who may be engaged in forum shopping.  The Court does not reach that factor because it determines that each of the other *Security Farms* factors weighs in favor of permitting the Bankruptcy Court to address the Threshold Issue.

### 3.   The Jury Trial Issue.

The parties agree that under the Northern District Bankruptcy Rule 9015-2(a), the Bankruptcy Court must decide the question of whether the parties have a right to a jury trial on the claims and counterclaims.  *See also Hjelmeset*, 2018 WL 558917, at *4.  The Court concludes it need not reach this issue at this juncture.  As discussed above, if the turnover claim was the only claim at issue, all parties agree that claim is core.  In order to decide that claim, the Bankruptcy Court still would be required to resolve the Threshold Issue.  For that reason, the Court will adopt the Bankruptcy Court's recommendation that this Court permit it to address that issue.

### CONCLUSION

For the foregoing reasons, the Court DENIES the motion for withdrawal of reference without prejudice and adopts the Bankruptcy Court's determination that the Bankruptcy Court resolve the Threshold Issue.

**IT IS SO ORDERED.**

Dated: June 19, 2020

JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California